**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 2:23-cr-00323** |
| | : | |
| **TYLER MARX** | : | |
| | : | |

---

**Diamond, J.**                                                    **November 22, 2023**

**MEMORANDUM OPINION**

In this wire fraud prosecution, Tyler Marx seeks disclosure of transcripts that purportedly show that the Government presented incorrect financial loss calculations to the grand jury. (Doc. No. 22.) Marx urges that such a presentation would compel dismissal of his indictment. (Id.) Because loss is not an element of wire fraud, however, even if the grand jury heard incorrect calculations, dismissal is not warranted. In these circumstances, I will deny Marx's Motion.

## I.     BACKGROUND

On July 27, 2023, the grand jury charged Marx with one count of conspiracy to commit wire fraud and four counts of wire fraud. (Doc. Nos. 1, 26.) As alleged, Marx made false and misleading statements to drive up the price of "dead" or worthless cryptocurrencies and then sold them before the value inevitably plummeted. (Id.)

Marx's co-defendant in this alleged "pump and dump" scheme stipulated that that their victims had lost $3.6 million. (Doc. Nos. 22, 26.) Defendant has identified significant flaws in that calculation, however, and urges that the victims actually made a profit of between $5,700 and $29,500. (Doc. No. 22) "The [G]overnment agrees with the [D]efendant that a more precise loss figure is necessary." (Doc. No. 26.)

1

Marx informed the Government of the calculation errors on June 29, 2023.  (Doc. No. 22.) Marx implies—but does not explicitly allege—that the Government nonetheless then presented those incorrect loss calculations to the grand jury.  Urging that this could warrant dismissal of his indictment, Marx asks me to order disclosure of "transcripts of all of the proceedings before the grand jury concerning and/or related to the Government's loss analysis."  (Doc. No. 22.)

## II.    LEGAL STANDARDS

Abundant authority compels courts to maintain the unique secrecy attached to grand jury proceedings.  See Douglas Oil Co. of Ca. v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979) ("The proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.").  Indeed, the Supreme Court has observed that grand jury secrecy is "'a long-established policy' . . . older than our Nation itself.'"  Pittsburgh Plate Glass Co. v. U.S., 360 U.S. 395, 399 (1959) (quoting U.S. v. Proctor & Gamble Co., 356 U.S. 677, 681 (1958)).  The secrecy requirement created at common law is codified by Rule 6(e), which is "intended to preserve the tradition of grand jury secrecy, creating a general rule of confidentiality for all matters occurring before the grand jury."  U.S. v. Smith, 123 F.3d 140, 148 (3d Cir. 1997); see also U.S. v. Teva Pharm. USA, Inc., No. 20-200, 2022 WL 7528898, at *1 (E.D. Pa. Oct. 13, 2022) (Rule 6(e) compels secrecy respecting "anything that reveals what occurred before the grand jury, including exhibits and testimony.").  Not surprisingly, exceptions to this secrecy requirement are quite limited.

A party seeking disclosure "in connection with a with a judicial proceeding" under Rule 6(e)(3)(E)(i) (like Marx here) must show: (1) that the materials sought are necessary to avoid possible injustice in another proceeding, (2) the need for disclosure is greater than the need for

secrecy, and (3) the request is structured to cover only those materials satisfying the first two requirements.  See Douglas Oil, 441 U.S. at 222; see also In re Grand Jury Matter, 697 F.2d 511, 513 (3d Cir. 1982) ("[D]isclosure is only permissible if . . . the three pronged test enunciated by the Supreme Court in [Douglas Oil] is satisfied.").

Disclosure is also permitted if the defendant shows "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). The defendant "must show a particularized need for that information which outweighs the public interest in secrecy." U.S. v. Minerd, 299 F.App'x 110, 111 (3d Cir. 2008).  The defendant may thus obtain "pre-trial discovery of the testimony of a witness when it relates to the dismissal of the indictment." U.S. v. Budzanoski, 462 F.2d 443, 454 (3d Cir. 1972).

Neither exception provides a basis for the relief Marx seeks here.

## III.    DISCUSSION

### A.  Rule 6(e)(3)(E)(i)

The "judicial proceeding" on which Marx bases his request is the instant case.  Rule 6(e)(3)(E)(i) does not authorize disclosure in these circumstances.  See Teva Pharm. USA, Inc., 2022 WL 7528898, at *2 n.1; see also U.S. v. Bunty, 617 F. Supp. 2d 359, 372 (E.D. Pa. 2008) ("[I]t is settled that . . . exception [(i)] applies only to situations where the judicial proceeding for which disclosure of grand jury material is sought is a judicial proceeding *different* from the criminal trial authorized by the grand jury's indictment." (emphasis added)) (quoting U.S. v. Nguyen, 314 F. Supp. 2d 612, 615 (E.D. Va. 2004) (citing Proctor & Gamble Co., 356 U.S. at 677)).

### B.  Rule 6(e)(3)(E)(ii)

Once again, Marx must establish that "irregularities in the grand jury proceedings may create a basis for dismissal of the indictment." Teva Pharm. USA, Inc., 2022 WL 7528898, at *2 (citing Bunty, 617 F. Supp. 2d at 372). Such irregularities must be shown on "particularized and factually based grounds." See Teva Pharm. USA, Inc., 2022 WL 7528898, at *2 (citing U.S. v. McDowell, 888 F.2d 285, 289 (3d Cir. 1989)). Marx's request must be "structured to cover only material so needed." Id. (citing In re Grand Jury Matter (Catania), 682 F.2d 61, 64 (3d Cir. 1982)).

First, although the Government apparently acknowledges that the $3.6 million loss figure is incorrect, it is by no means clear that any grand jury "irregularity" occurred. Once again, Marx does not explicitly allege that the Government actually presented the incorrect loss calculation to the grand jury. Rather, Marx alleges only that after learning of the calculation errors, the "Government submitted this case to the Grand Jury." (Doc. No. 22.) Marx then points out that the Government's Notice of Forfeiture included the $3.6 million figure. (Id.) Yet, the Indictment itself includes no reference to the $3.6 million figure or to any specific loss amount.

It appears that Marx has inferred that the loss calculation was presented to the grand jury because the Government's Notice of Forfeiture provides that $3.6 million in criminal "proceeds" should be forfeited. This is not the same as a loss calculation of $3.6 million. 18 U.S.C. § 981; see U.S. v. Lacerda, 958 F.3d 196, 218 (3d Cir. 2020) ("[T]he purpose of forfeiture statutes is to separate the criminal from his ill-gotten gains.") (citing Honeycutt v. U.S., 581 U.S. 443, 447 (2017)); see also U.S. v. Scarfo, 41 F.4th 136, 216 n.94 (3d Cir. 2022) ("The . . . forfeiture ordered by the Court does not conflict with the loss calculation because forfeiture is measured by the defendant's ill-gotten gains, not the loss to the victims.").

In any event, loss to the victim is not an element of wire fraud. U.S. v. Keller, 359 F. App'x

4

912, 914 (3d Cir. 2010) ("the essential elements of wire fraud [are]: (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use, or cause of use, of interstate wire communications in furtherance of the scheme."); see U.S. v. Riley, 621 F.3d 312, 327 (3d Cir. 2010) ("[T]he Government need not prove actual loss to the locality to satisfy the elements of the mail fraud statute . . . the risk of exposure to such a loss of money or property is sufficient . . . ."); see also U.S. v. Brown, No. 12-0367, 2013 WL 3463585, at *6 n.12 (E.D. Pa. Jul. 9, 2013) (federal wire fraud and federal mail fraud statutes are interpreted the same way) (citing United States v. Yusuf, 536 F.3d 178, 188 n.14 (3d Cir. 2008)).

In these circumstances, there is no basis for the relief Marx seeks.  I "may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[]." Bank of Nova Scotia v. U.S., 487 U.S. 250, 254 (1988).  Yet, Marx has not explicitly alleged that the grand jury learned of the purported $3.6 million loss.  Even if it had, Marx has not explained how that could have prejudiced him when loss is not an element of wire fraud.  See 18 U.S.C. § 1343.  Absent prejudice, Rule 6(e)(3)(E)(ii) does not authorize dismissal of Marx's indictment, and so cannot authorize disclosure of the underlying grand jury transcripts.  U.S. v. Goodman, No. 22-435, 2023 WL 5672834, at *5 (E.D. Pa. Sept. 1, 2023) (denying Motion to Release Grand Jury Transcript where "Defendants have not provided any evidence that the grand jury proceedings were irregular or that there was an error that substantially affected the outcome of the proceeding."); see also Bank of Nova Scotia, U.S. at 256 ("[D]ismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations.") (internal quotations omitted); U.S. v. Destio, 153 F. App'x 888, 892 (3d Cir. 2005) ("A defendant is not entitled to challenge an indictment on the ground that it is not

supported by adequate or competent evidence.").

### IV.    CONCLUSION

Marx has shown, at most, that the Government presented inaccurate calculations to the grand jury.   A less than perfect evidentiary presentation did not impair the grand jury's understanding of wire fraud's elements, however.  If Marx believes that his alleged scheme caused his investors to make money, he will, presumably, seek to present such evidence at trial or at sentencing (should he be convicted).  I will not order disclosure of secret grand jury materials so that Marx can make such a showing *before* trial.

I will, accordingly, deny Marx's Motion.

An Appropriate Order follows.

**BY THE COURT.**

*/s/ Paul S. Diamond*

November 22, 2023                                                    Paul S. Diamond, J.