# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 23-323 |
| v. | : | DATE FILED: |
| TYLER MARX | : | VIOLATION:<br>18 U.S.C. § 371 (conspiracy to commit |
| | : | wire fraud – 1 count) |

## SUPERSEDING INFORMATION

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this superseding information:

### BACKGROUND

*Relevant Individuals and Entities*

1. Defendant TYLER MARX was a resident of the Commonwealth of Virginia. Defendant MARX was the Chief Executive Officer of Belacam, a company that purported to offer a social media site through which users could post visual content and receive Belacoin cryptocurrency when other users responded favorably to the posts. According to a Belacam-issued "white paper," "Belacam, originally intended to be the 'Instagram of Cryptocurrency,' became an earning platform for impoverished communities, cryptocurrency enthusiasts, and everyday smartphone users."

2. Tanner Roughton, charged elsewhere, was a resident of the Commonwealth of Virginia and the Chief Operating Officer of Belacam.

3.      The term "cryptocurrency" referred to a class of financial instruments that allowed the transfer of value between individuals without any third-party mediation or government regulation. Cryptocurrencies existed entirely in digital format and not in any physical form. Such cryptocurrency was not issued by any government, bank, or company, but rather was generated and controlled automatically through computer software operated on a decentralized, "peer-to-peer" network sometimes using the "Blockchain" concept. The Blockchain for cryptocurrencies was the record of every transaction that had ever occurred in that particular cryptocurrency. It was often referred to as a "ledger" of all transactions. This transfer of cryptocurrency was accomplished with a set of cryptographic protocols. These protocols required that each transaction's sender and receiver held an appropriate cryptographic key. Examples of cryptocurrencies in widespread use included Bitcoin, Ethereum, and Litecoin.

4.      Cryptocurrencies were traded on cryptocurrency exchanges or marketplaces, where users could buy, sell, and trade cryptocurrencies. These exchanges were entirely digital, and transactions were typically performed over the Internet. Some cryptocurrency exchanges allowed direct conversions of cryptocurrencies into government-backed currencies such as U.S. dollars, while other exchanges only allowed buying, selling, and trading of cryptocurrencies.

5.      Beyond their function as digital financial instruments, cryptocurrencies were sometimes used in other digital contexts, called "use cases." For instance, a particular computer game may have been a cryptocurrency's "use case." A user of that computer game could earn a particular type of cryptocurrency by playing or winning the game, and the earned cryptocurrency could then be used within that computer game or be traded on a cryptocurrency exchange.

6. 1CRedit (or "1CR") was a cryptocurrency. 1CRedit was bought, sold, and traded on a crypto-to-crypto digital asset trading service (together with its predecessors, successors, parents, subsidiaries, and affiliates, hereinafter referred to as "Cryptocurrency Exchange A"). Cryptocurrency Exchange A allowed users to electronically buy, sell, and trade cryptocurrency in exchange for another cryptocurrency.

7. "1CRCade" or the "1CR Arcade" was a digital game platform that was advertised as a use case for 1CRedit in that users of 1CRCade could use and earn 1CRedit cryptocurrency by playing games on 1CRCade.

8. Belacoin (or "Bela") was a cryptocurrency. Belacoin was bought, sold, and traded on Cryptocurrency Exchange A. After May 2018, Belacoin was delisted from Cryptocurrency Exchange A, and Belacoin purchases, sales, and trades were made on other cryptocurrency exchanges similar to Cryptocurrency Exchange A.

9. "Belacam" was an online social media platform that was advertised as a use case for Belacoin. Belacam users could upload and share photos, and other users could pay Belacoin to "like" posts. The uploading user would, in return, receive Belacoin for these "like"s.

10. In order to convert 1CR or Belacoin to a government-backed currency such as U.S. dollars, defendant TYLER MARX and Tanner Roughton converted 1CR or Belacoin to Bitcoin or another cryptocurrency at Cryptocurrency Exchange A and transferred the Bitcoin to Cryptocurrency Exchange B or Cryptocurrency Exchange C. From Cryptocurrency Exchange B or Cryptocurrency Exchange C, defendant MARX and Roughton could convert the Bitcoin cryptocurrency to cash and wire transfer the cash to their personal bank accounts.

11.    A "pump and dump" was a form of fraud in which the perpetrators purchase a security, commodity, or cryptocurrency at a low price, artificially inflate the price by engaging in market manipulation, including false and misleading statements, and then sell their interests at the artificially inflated price, after which the investors who purchased at the artificially inflated prices suffer losses when the price plummets.

## THE CONSPIRACY

12.    From at least in or about March 2016 through at least in or about June 2020, in the Eastern District of Pennsylvania and elsewhere, defendant

## TYLER MARX

together with Tanner Roughton, charged elsewhere, conspired to commit an offense against the United States, namely, wire fraud, that is, knowingly and with the intent to defraud, to devise, and to intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted certain wire communications in interstate and foreign commerce, for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS

It was part of the conspiracy that:

13.    The conspirators manipulated the price of and trading in 1CRedit and Belacoin cryptocurrencies using materially false statements, deceitful statements of half-truths, and the concealment of material facts in order to defraud investors in 1CRedit and Belacoin and obtain illicit proceeds.

14.    The conspirators acquired large positions in 1CRedit and Belacoin

cryptocurrencies, which were thinly traded with low valuations.

15.     The conspirators engaged in manipulative trading of 1CRedit and Belacoin which had the effect of artificially increasing the trading volume and price of 1CRedit and Belacoin.

16.     The conspirators engaged in deceptive and manipulative promotional activity about 1CRedit, 1CRCade, Belacoin, and Belacam directed to the public and potential purchasers, by making false and misleading statements about 1CRedit, 1CRCade, Belacoin, and Belacam, and misrepresenting that 1CRedit and Belacoin were not being manipulated nor being operated as a "pump and dump." These statements were made for the purpose of increasing public interest in 1CRedit and Belacoin as a legitimate investment and to make them seem more valuable than they were, when, in reality, the conspirators were fraudulently manipulating trading in 1CRedit and Belacoin.

17.     Once the prices of 1CRedit and Belacoin were artificially increased—as a result of the conspirators' false and fraudulent statements and manipulative trading—the conspirators sold 1CRedit and Belacoin at inflated prices and reaped illicit trading profits to the detriment of the investing public.

18.     Because public purchasers had first lost money due to the conspirators' 1CRedit manipulation, the conspirators, when thereafter conducting their fraudulent manipulation of Belacoin, made false and fraudulent statements about their lack of involvement with 1CRedit, including denying that they had worked on, and controlled, 1CRedit. At the time they made these statements, 1CRedit's price had already quickly risen and fallen. In attempting to market Belacoin, the conspirators assured the public and potential purchasers that Belacoin was being operated to avoid a pump and dump, when, in fact, the conspirators were fraudulently

manipulating Belacoin, similar to their manipulation of 1CRedit.

## OVERT ACTS

In furtherance of the conspiracy, defendant TYLER MARX and Tyler Roughton, charged elsewhere, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1. On or about September 30, 2016, defendant TYLER MARX sold 28.01 units of 1CRedit to Victim SS on Cryptocurrency Exchange A.

2. On or about October 2, 2016, defendant TYLER MARX sold 53.59 units of 1CRedit to Victim SS on Cryptocurrency Exchange A.

3. On or about January 30, 2017, defendant TYLER MARX sold 341,509.7285 units of Belacoin to Victim TC on Cryptocurrency Exchange A.

4. On or about May 14, 2017, defendant TYLER MARX sold 875 units of Belacoin to Victim JR on Cryptocurrency Exchange A.

All in violation of Title 18, United States Code, Section 371.

*Christine & Ayers for*
**JACQUELINE C. ROMERO**
**UNITED STATES ATTORNEY**

*No.*_ _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

TYLER MARX

SUPERSEDING INFORMATION

Counts
18 U.S.C. § 371 (conspiracy to commit wire fraud – 1 count)

A true bill.

_____
Foreperson

Filed in open court this _____day,
Of _____A.D. 20_____
_____
Foreperson

Bail, $_____